UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARK NEITZKE, PAUL A. VIS, JULIE VIS, BILL VIS, RON BROWN, JANICE BROWN, BRENDA AGUILAR, SEACREST MANAGEMENT, DUANE R. ANDERSON, MIKE ANDERSON, JOHN ARMSTRONG, GARY ARNELL, CLENETH ARNELL, DALLEN S. ATACK, LUJUANA BADGER, SPRINGFIELD INVESTMENTS LLC, CODY BAIR, BRUCE BAIRD, BRIAN R. BAIRETT, BAT INVESTMENT GROUP LLC, ANDREW BAUMAN, SCOTT BENSON, ANTHONY L. BENZINGER, TINA L. BENZINGER, BRIAN J. BLACK, DARLENE BORZENSKI, DAVID T. BOURGEOIS, BRIAN BOWER, ELIZABETH BOWER, RICHARD S. BOYER, LORI BOYER, ROBERT D. BRADEN, KYLE BRADFORD, GARY BROCKBANK, GARY H. BROCKBANK SEP IRA, GARY H. BROCKBANK MDS, DUNCAN H. BROCKBANK, DUNCAN H. BROCKBANK IRA, DOROTHY D. BROCKBANK, JOSHUA M. BROCKBANK IRA, NORMAN BROCKBANK, W. HUGHES BROCKBANK, W HUGHES BROCKBANK-LIVING TRUST, KIMBERLY B. BROCKBANK IRA, PENNY BROWN, DAVID CHYTKA, MARY S. CLAEYS, DANIEL CLARK, RUSSELL CLARK, ADAM R. CLARKE, JERRY P. CLAUNCH, SCOTT D. CLAUCH, SHIRLEY M. CLAUCH, TORY CLAYTON, AZA B. CLINE, DIANA COE, JO ANN COELHO-ROSE, CADE COLTRIN, NATASHA COLTRIN, CORY G. COLTRIN, ANGELO CONTINO, JOE O. COTTON, MARVIN CURTIS, MARVIN BENJAMIN CURTIS, ERICA J. DAVIS, TODD R. DAYLONG,  CLIFFORD E. DENDEKKER, WILLY T. DENDEKKER, TJAPKO DETMERS, MARY LOU DETMERS, LARRY E. DEWEY, ROBIN A. DEWEY, FRED DICKERSON, RANDY DIRKS, PATRICK DONOHOE, COLLIN DVORK, RICHARD DVORK, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civ. 09-4028<br><br><br><br><br><br><br><br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PUNITIVE DAMAGES AND COSTS |

CHARLES ENGLISH, BRUCE                )
ESKANDER, STEFANIE ESKANDER,          )
CHRIS R. EVANS, SHAWN EVENSON,        )
INGE FAN, RAY FARKAS, PAULA J.        )
FARKAS, RICHARD W.                    )
FEATHERSTONE, ELIZABETH A.            )
FEATHERSTONE, DARWIN FIELDING,        )
TRACI A. FINE, MAREEN                 )
DUNCAN-FISHER, LARRY E.               )
GOODROW, SR., STEVEN L.               )
GOYETCHE, JAMES GOULD,                )
ACCELERATED APPRAISALS LLC,           )
CRAIG GREEN, HAZEL GREEN,             )
BENJAMIN S. GREENWOOD,                )
JEFFREY HADERLIE, DAN HALBACH,        )
JARED HARDY, JASON J.                 )
HARMELINK, BRYAN  HASLAM,             )
JAROM HIBBERT, MARSHALL RANDY         )
A. HUDSON, BONNIE J. HUISH, J.        )
MATTHEW HUISH, TERRY L.               )
HUMBER, CHRISTINA HUMMER,             )
CHARLES D. IRWIN, JAMES               )
JACKSON, WILLIAM JOHANSEN,            )
TEAK JOHNSON, PEGGY JOHNSTON,         )
DAVID SCOTT JOSEPH, JOHN KAHLE,       )
STEPHEN A. KANE, GREGORY              )
KELLER, KAREN KENT, KEVIN             )
KLUMPP, JOSHUA KNAPTON, LISA          )
KNAPTON, TERI KNOCHENMUS,             )
JAMES A. KOBELAK, CAROLYN E.          )
KOBELAK, GARWOOD KOTTIE,              )
DAROLD B. LAABS, HELEN A. LAABS,      )
BETTY R. LAUB, TONY LEBLANC,          )
ROGER LECLAIR, KENNETH                )
LEMINGS, KIMBERLYN LIAL, WARREN       )
J. LONGHURST, RAFAEL LOPEZ,           )
JARED R. LUCAS, THOMAS G. MAILE       )
5TH, DARIN MALCOLM, LEON D.           )
MALCOM, KERRY L. MALCOM, LOIS A.      )
MARTIN, SALLY MARTINEZ, MELANIE       )
MAXFIELD, JOHN R. MEHL, DANA A.       )
MEIER, RUSSELL R. MILLER,             )
BRANDON MILLER, KENDALL C.            )
MILLER, ROBERT L. MORRISON,           )
TERRI MURPHY, DEANE NAULT,            )
JANET NAULT, JAMES OFFERDAHL,         )
DAN L. OSTROM, ROSA OTERO, DAVE       )
E. OVESON, TERRY PANTALEO,            )
KELLY PARSONS, JAMES D. PAXMAN,       )

ANDREA PENNERS, DAVID PERRY,              )
BRYAN PHILLIPS, STEPHEN E.PHILO,          )
KATHY M. PHILO, FRED PIERCE,              )
TARA PIERCE, ROBERT T. PIERCE,            )
CHRIS PILLING, TYSON PITCHER,             )
JASON R. RAVNSBORG, ROBERT W.             )
RAYBOULD, GILBERT RAZO, PAUL E.           )
RINKEL, ALICIA A. ROBERTSON,              )
WILLIAM D. ROZAR, PETER                   )
SALZMANN, SHARON SALZMANN,                )
MICHAEL SCHMIDT, SCOTT                    )
SCHOBER, RONALD SCHOBER,                  )
SANDRA SCHOBER, DALE E.                   )
SCHWANTES, CALVIN SHELLEY,                )
JANINA SHEPPARD, ROCHELLE                 )
SHERIDAN, MICHAEL S. SHERMAN,             )
KATHRYN M. SHERMAN, ELINA B.              )
SIMON, RANDY SMITH, ROGER                 )
SMITH, RAYMOND PILLMAN, JR.,              )
MICHELLE STATTI, DAVID STOUT,             )
LISA TA'ALA, JAMES D. TAYLOR,             )
JEFFREY J. TESCH,  BRYAN R. TEW,          )
TERRY TOMAN, JOHN E. TRACHSEL,            )
TED W. TRONSON, JEFFREY L.                )
TURNER, RYAN TURNER, REBECCA              )
TYBERG, GERALD UITHOVEN,                  )
SERGEY N. VARIVODA, DANIEL W.             )
VIS, JEANNE VIS, KAY MARTIN,              )
CHRISTOPHER WALKER, BRYON                 )
WALLS TRUST, RW INC., EARLE               )
WELLS, STEPHEN A. WILCOX, MAX             )
WILLARD, TERESA L. WILLARD,               )
MELANIE WILLIAMS, INFINITE                )
ABUNDANCE LLC, KEVIN WILSON,              )
KAYLEEN H. WINKLER, MICHAEL               )
ZIMMERMAN, BRAD ZOBRIST,                  )
FRANK HAROLD, COMMAND                     )
INVESTMENTS LLC, KJM REAL                 )
ESTATE, HURRICANE INVESTMENTS             )
LLC, AXIOM INVESTMENTS LLC,               )
FIELDING FINANCIAL INC., ELKHORN          )
CHIROPRACTIC INC., CABIN HOLLOW           )
HOLDINGS LLC, TEAK LLC, VAN               )
CORTLAND ENTERPRISES, DREAM               )
TEAM ANESTHESIA PC, HYDRO-TEK             )
POOLS INC., OSTROM ENTERPRISES,           )
KUF MANAGEMENT LLC, KP                    )

| CONSULTING, QUALITY MADE INC., | ) |
| DAVID PECK, and the COMMUNITY | ) |
| CHURCH OF GOD, | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| vs. | ) |
| | ) |
| JEFF LOWRANCE, individually, and | ) |
| d/b/a First Capital Savings & Loan, | ) |
| a/k/a First Capital Savings & Loan | ) |
| Limited, f/d/b/a Mentor Investing Inc., | ) |
| d/b/a Swiss Providence, d/b/a Logos | ) |
| Publishing Group, d/b/a Marketwise | ) |
| Trading SA and d/b/a USA Tomorrow, | ) |
| | ) |
| Defendants. | ) |

Plaintiffs brought suit against defendant, Jeff Lowrance and his associated entities, for inducing them to invest in Lowrance's Ponzi-type investment scheme. After Lowrance failed to respond to the complaint, this court entered a default judgment. Plaintiffs now move for punitive damages and attorney costs. Lowrance failed to respond to the motion. The motion is granted.

## BACKGROUND

Lowrance lured numerous people to invest money with his online trading company. On his website, Lowrance promised potential investors that if they opened a fixed exchange currency deposit account and invested their money with his company, First Capital Savings & Loan, then First Capital would trade the money in the foreign exchange market (FOREX). First Capital's website contained a link to trading statistics in Excel spreadsheets with alleged trade dates and the number of trades. The website contained

4

schedules of the rate of return investors should expect on their initial investments.[1] The website also reassured investors that they could withdraw their principal investment after their fund matured, which could be in as little as six months.

Plaintiffs invested their money with Lowrance through First Capital. Plaintiffs allege that Lowrance deceived them from the beginning of their relationship because he made false and misleading statements about how he would invest their money. Specifically, plaintiffs argue that Lowrance made false representations that he was making live trades in the FOREX market, that he had traders making real trades, that he completed FOREX trades, that the money generated from the FOREX trading would better the plaintiffs and the company, and that Lowrance's business activities were successful when really the success was a series of monetary transfers from one client to another through a Ponzi-type scheme. Not only did Lowrance disseminate this false information through First Capital's website, but he also made oral representations to plaintiffs that their investments were making a substantial profit.

Around mid-June 2008, Lowrance failed to make plaintiffs' monthly interest payments and forced plaintiffs to accept a compound method of interest. Plaintiffs became suspicious, but Lowrance reassured plaintiffs that

---

[1] As of the date of this order, First Capital's website could be accessed at http://www.firstcapitalsl.com/.

they would receive their principal investments back. Lowrance even set a January 5, 2009, deadline for returning plaintiffs' principal investments, but he failed to return the money to plaintiffs.

Plaintiffs brought this suit against Lowrance and alleged fraud in the inducement, fraudulent mismanagement of accounts, breach of contract, and punitive damages. Lowrance failed to respond to any of plaintiffs' filings and this court entered a default judgment pursuant to Fed. R. Civ. P. 55(a) on September 29, 2009, for $40,386,085 in compensatory damages. The court reserved ruling on punitive damages and costs pending further briefing. Plaintiffs briefed the issue of their entitlement to punitive damages and costs. Lowrance failed to respond to the brief.

## ANALYSIS

### I.    Punitive Damages

#### A.    Punitive Damages Are Appropriate

This action is before the court on diversity grounds and South Dakota state law supplies the substantive law. In South Dakota, general damages do not normally include exemplary or penal damages. SDCL 21-1-4. But plaintiffs may, in certain circumstances, recover punitive damages. *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991); SDCL 21-3-2. Under SDCL 21-3-2, a plaintiff claiming punitive damages must show that "the defendant has been guilty of oppression, fraud, or malice, actual or presumed." If the plaintiff makes this showing, punitive damages may be given "for the sake of

example, and by way of punishing the defendant." SDCL 21-3-2; *see also Gross v. Kouf*, 349 N.W.2d 652, 654 (S.D. 1984) ("[T]he purpose of awarding punitive damages is to punish the wrongdoer. . . . [T]his [punitive] award should serve as a warning to others").

Before a claim for punitive damages may be submitted to a factfinder, the court must find that a reasonable basis exists to "believe that there has been willful, wanton or malicious conduct on the part of the party claimed against." SDCL 21-1-4.1. The party seeking punitive damages must make this showing by clear and convincing evidence. *Id.* After the party makes this showing, however, he must only demonstrate to the factfinder by a preponderance of the evidence that he is entitled to punitive damages. *Dahl*, 474 N.W.2d at 902 (citing *Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120, 125 (S.D. 1977)).

Plaintiffs argue that Lowrance acted with malice in inducing them to invest their money in his Ponzi-type scheme. All punitive damages claims, even if based on a theory of fraud, require a showing of either actual or presumed malice. *Id.* at 900. "Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person." *Id.* (citing *Gamble v. Keyes*, 178 N.W. 870, 872 (S.D. 1920)). A person acts with actual malice when his actions are intentional. *Moosmeier v. Johnson*, 412 N.W.2d 887, 890 (S.D. 1987).

After a review of the evidence, the court finds that Lowrance intentionally preyed on plaintiffs and induced them to believe that they would receive a fixed and secure interest rate in return for their principal investment. In part, Lowrance induced plaintiffs to invest with him through his website:

> By opening a FXCD Account (Fixed Exchange Currency Deposit), individuals or corporations will lock in a high rate of return with the freedom to access interest distributions every month. With easy to use online account access, monthly interest can [sic] transferred to a FCSL Savings Account a FCSL MasterCard or wired to any other bank account worldwide.

Docket 23-1.

Lowrance created an elaborate website containing multiple Excel graphs and spreadsheets showing alleged transfers to induce people to invest money. Once plaintiffs wired their money to Lowrance, he deposited the money in his own account and treated the money as his own. Neither Lowrance nor his agents ever completed a "live trade" with plaintiffs' money. He never allowed any plaintiff to withdraw his or her money from his or her online account. Lowrance acted intentionally at every stage of his Ponzi-type scheme, from creating the website, to inducing people to invest money, accepting money and using it for his personal economic gain, and refusing to return the money to plaintiffs. Lowrance's intentional actions constitute actual malice because he acted with ill will to harm plaintiffs.

Plaintiffs also argue in the alternative that Lowrance acted with presumed malice. "Presumed, legal malice . . . is malice which the law infers from or imputes to certain acts." *Dahl*, 474 N.W.2d at 900 (citing *Hannahs v. Noah*, 158 N.W.2d 678, 682 (S.D. 1968)). An inference of malice may be made when the person acts willfully or wantonly and injures another. *Id.* "Willful and wanton misconduct demonstrates an affirmative, reckless state of mind or deliberate recklessness on the part of the defendant." *Tranby v. Brodock*, 348 N.W.2d 458, 461 (S.D. 1984). This is an objective, not subjective, standard. *Id.*

The court finds that if Lowrance did not at first intend to keep plaintiffs' money and did intend to invest the money, he acted with recklessness in refusing to return plaintiffs' principal investments. From an objective viewpoint, refusing to honor a promise to invest a person's money and keeping it for your own personal gain demonstrates, at a minimum, a reckless state of mind. *See Tranby*, 348 N.W.2d at 461.

Plaintiffs have met the standard of showing by clear and convincing evidence that a reasonable basis exists that Lowrance acted with actual or presumed malice. Normally after making this showing, the issue of punitive damages would be presented to a jury for its determination. But this case ended with a default judgment because Lowrance failed to respond to any of plaintiffs' pleadings. Therefore, plaintiffs must demonstrate to the court, by a

preponderance of the evidence, that they are entitled to the punitive damages that they seek, $127,295,862 or treble the amount of actual court-awarded damages. Docket 9 at ¶ 7.

**B.    Plaintiffs Have Proven that They Are Entitled to Treble Punitive Damages**

To serve the purpose of punishment and determent, punitive damages must not be so "large as to shock the sense of fair-minded men, but they may considerably exceed compensatory damages." *Gross*, 349 N.W.2d at 654. South Dakota does not apply a precise mathematical ratio between compensatory and punitive damages, rather "the amount of punitive damages turns on the particular facts of each case." *Id.* Courts view five factors in determining the amount of punitive damages: "(1) the amount allowed in compensatory damages; (2) the nature and enormity of the wrong; (3) the intent of the wrongdoer; (4) the wrongdoer's financial condition; and (5) all of the circumstances attendant to the wrongdoer's actions." *Id.* (citing *Hulstein v. Meilman Food Indus.*, 293 N.W.2d 889, 892 (S.D. 1980)).

Under the first factor, the amount of compensatory damages, this court entered default judgment against Lowrance for $40,386,085. Docket 22. Treble damages on $40,386,085 is $121,158,255. Treble damages are appropriate on a punitive damages claim. *See TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 460 (1993) (upholding a punitive damages award of a 10-to-1 ratio to compensatory damages); *Gross*, 349 N.W.2d at 654

(upholding a jury's award of punitive damages that was three times larger than compensatory damages award); *Hulstein*, 293 N.W.2d at 892 (upholding a jury's award of punitive damages that was eleven times larger than the compensatory damages award).

The second factor examines the nature and enormity of the wrong. As the Supreme Court has noted, "some wrongs are more blameworthy than others." *BMW v. Gore*, 517 U.S. 559, 575 (1996).[2] " '[T]rickery and deceit' . . . are more reprehensible than negligence." *Id.* at 576 (citing *TXO*, 509 U.S. at 462). Lowrance's conduct caused over $40 million in damages to investors. He induced plaintiffs to invest with him, lied about his actions, and refused to return plaintiffs' money. Even after plaintiffs filed this suit against Lowrance, he continued to solicit new investors through First Capital's website. Lowrance has not accepted responsibility or even acknowledged this lawsuit. Treble compensatory damages are appropriate as a punitive damages award to address the nature and enormity of Lowrance's trickery and deceit.

The intent of the wrongdoer under the third prong is unclear from the record because Lowrance did not respond to this lawsuit. But from the facts alleged by plaintiffs, Lowrance never intended to invest their money in the

---

[2] The United States Supreme Court cases cited in this order concern the due process limits for punitive damages awards. While due process is not at issue here, the cases are still persuasive authority on the limits of and purposes for punitive damages.

FOREX. Rather, Lowrance intended, from the beginning, to deprive plaintiffs of their investment money.

The fourth factor examines the wrongdoer's financial condition. Because Lowrance did not respond to plaintiffs' complaint, the parties did not engage in discovery and the state of Lowrance's finances is unknown. But punitive damages for an economic injury "when done intentionally through affirmative actions of misconduct, or when the target is financially vulnerable, can warrant a substantial penalty." *BMW*, 517 U.S. at 576 (internal citation omitted). Not only were some of the plaintiffs financially vulnerable and naive investors, but Lowrance acted intentionally to deprive plaintiffs of their money. Triple the amount of compensatory damages may be a substantial penalty, but it is warranted in this situation.

Under the last factor, the court examines all of the attendant circumstances involving the misconduct. Lowrance acted with malice in encouraging plaintiffs to invest in his companies and refusing to return their money. First Capital's website promised investors "the freedom to access interest distributions every month" and contained links to "Open Account" and "Access Account." Docket 23-2. The website appeared to operate like an online trading system used by established, traditional investment firms. Lowrance's deceit involved time and planning to lure investors. Viewing the circumstances in their entirety, a punitive damages award of $121,158,255, triple the compensatory award of $40,386,085, is reasonable to punish Lowrance and deter others from similar conduct.

## II.    Costs and Attorney Fees

Plaintiffs also seek the costs that they incurred in this action. Docket 9 at ¶ 5. By affidavit, plaintiffs detailed each cost that they sustained in bringing suit, a total of $1,048.36. Docket 25-2. After entering a default judgment, courts can award costs to the prevailing party. 28 U.S.C. § 1920; *United States v. United Sec. Sav. Bank*, 394 F.3d 564, 566 (8th Cir. 2004) (upholding a district court's grant of a default judgment with costs).

The majority of plaintiffs' costs involve fax charges, photocopies, postage, subpoena fees, research charges, and mileage for plaintiffs' attorney when she traveled to Sioux Falls for this case. All of these costs are reasonable and expected costs in filing a lawsuit and serving subpoenas on Lowrance and various institutional banks. The requested $1,048.36 is reasonable for plaintiffs' costs in bringing this lawsuit. Accordingly, it is

ORDERED that plaintiffs' motion for punitive damages and costs (Docket 9) is granted. Each plaintiff is entitled to treble damages according to the distribution listed in the Default Judgment (Docket 20). Costs of $1,048.36 are awarded to plaintiffs.

Dated October 6, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE